## AS TO GUARDIANSHIP OF ALLEGED INCOMPETENTS.

Probate Court of Franklin County.

### IN RE GUARDIANSHIP OF GEORGE SMITH.

Decided, 1927.

*Guardians—Appointment of for Aged Persons—Not Warranted on the Ground of Age Alone—Nor Because of Adoption of Religious Beliefs of Some Currency—Bitterness Engendered by Being Placed Under Guardianship not Evidence of Delusion.*

Appointment of guardians by *ex parte* proceedings for the person and estate of a man eighty-one years of age, who had broken with his family by adopting religious belief of the Jonathan Edwards type, together with what is known as the "second coming" but without attempting to fix a time for that occurrence, held to have been without justification and are set aside and the proceedings dismissed.

*M. E. Thrailkill* and *John R. Horst*, for George Smith.
*Arnold, Wright & Harlor*, for the guardian.

JUDGE DANA F. REYNOLDS of the Common Pleas Court, sitting in place of JUDGE BOSTWICK of the Probate Court.

This case comes before the court on an application for the removal of guardians for the person and estate of George Smith, which guardians were heretofore appointed by the Probate Court of Franklin county, Ohio.

These guardians were appointed under provisions of Section 10989 of the G. C. of Ohio, which provides:

"Upon satisfactory proof that a person, resident of the county * * * is an idiot, or imbecile or lunatic, or an incompetent person by reason of advanced age or mental or physical disability or infirmity, the Probate Court shall appoint a guardian for such person."

The issue in this case is narrow and amounts to this— Is George Smith an incompetent by reason of mental disability? there being no claim or pretense that he is an idiot, imbecile or lunatic, or that he is incompetent by reason of physical disability or advanced age.

It is of course obvious to all that this question is not subject to a demonstrable proof, but it is in the final an-

alysis a matter of opinion, which must be based upon the conduct, actions and statements of the subject in connection with surrounding circumstances and conditions.

There is little dispute in this case as to really material facts.

George Smith is admittedly and apparently a man in good physical condition for his 81 years, and is active and able to care for all of his physical wants, even to the preparation of his own meals.

While not successful in business in a degree comparable to the success of his son, yet he has been successful in a small way. Coming from England as a young man with no assets but his trade as a shoemaker, his family, his youth and ambition, he succeeded in establishing here in America a home where he maintained and reared his family and educated his sons to an extent far in excess of his own opportunities, and established a business which over a period of ten or twelve years was evidently successful, as he built up a shoe manufacturing business in that period of time which grew from a shop operated only by himself to a factory employing thirty or forty persons. Whether the failure which followed in the nineties was due to his own lack in business qualifications, as inferred by his son, or whether to the panic of those times as stated by himself is really not greatly material in the instant case. There were thousands of failures during that time and it is not necessarily a reflection on one's business ability or mental competency that he was one of the many to have fallen by the wayside.

However something was salvaged from the wreck and with a limited capital George Smith entered a new field to him, that of building houses, at which he appears also to have been moderately successful, as he accumulated some $3,200 of which he put $2,000 into the shoe business started in Columbus, Ohio, by his sons, and however much help or advice he has had since that time, there can be no question but that his original investment in the G. Edwin Shoe Company was earned solely by his own efforts.

There can be no question that his present holdings are largely due to the management and advice of his son, and yet there also can be no doubt as to the economy, frugality and good management of George Smith in his daily affairs, as he always kept his expenditures within his income, up to the last few years, even though for more than twenty-one years his wife was a helpless invalid.    He worked at the shoe factory, salvaging merchantable material from what would otherwise have been waste, and at night and on Sundays assumed the care of his invalid wife to whom he most tenderly ministered.

Then came the breaking up of his home with the death of his wife and he was left alone in the world, his sons long prior thereto having established homes of their own where they were rearing their families.    It is small wonder that under such circumstances he turned for solace to the "Great Book of Books" and then it was that he embraced a religious belief radically different from that of his son G. Edwin Smith.

During all of this time George Smith's securities, which now amount to approximately $53,000 were kept by the son as a matter of economy and convenience, and that arrangement probably would never have been disturbed nor an application made for a guardian, had not George Smith wished to secure some of his stock for the purpose of selling the same and giving some of the proceeds at least to his personal charities.

The father and son had their differences over the question of religion prior to this time, the result of which had been that the father ceased to frequent the home of his son, but there had been no open breach such as developed on this occasion.

G. Edwin Smith, the son, had bought forty (40) shares of stock of The Huntington National Bank for his father, the father furnishing $10,000 in cash, a part of which was realized from the sale of Liberty Bonds.    This stock was issued in the name of the son, his explanation being that it was for convenience in voting the said stock, and G.

Edwin Smith stated that he told his father that this stock was issued in his, G. Edwin Smith's name, but it is not clear from his testimony when he imparted this information to his father. The father claims not to have known this fact until the payment of the first dividend, and he testified that he said nothing upon receiving this check, but that he did not like it. The fire then was smoldering at that time and burst into flames upon the son's refusal to turn over to his father, the father's own property, for the reason, as the son said, that the father was not competent to care for the same. Angry words were exchanged at this time, but under the circumstances the court feels that there is little if any probative value in anything that George Smith then said as reflecting on his mental competency or incompetency. The result of this incident was the application by the son, G. Edwin Smith, for a guardian for his father George Smith.

At the hearing in the Probate Court, George Smith was without counsel, but the son had employed two physicians, namely, Drs. Emerick and Wagenhals, and largely upon the testimony of these doctors, given after a brief examination on the day of the hearing, a guardian was appointed for the estate of George Smith. Subsequent thereto G. Edwin Smith made application for and was appointed guardian of the person of George Smith, prompted by the threats of his father as to his possible marriage, and by his threats to hound his son until he was given his property. None of these threats in the opinion of the court indicate any mental incompetency on the part of George Smith; that of getting married not being serious, and the other, while perhaps serious, was a statement of an angry person and does not materially reflect his mental condition.

Subsequent thereto George Smith employed counsel, and they then made an application for the removal of his guardians and upon the hearing before this court on such application both of the aforesaid physicians were called as witnesses by counsel representing the guardians. Both of

these physicians in their testimony seemed to base their opinion as to George Smith's incompetency upon the same things, namely, George Smith's *delusion* as to persecution by his son, his religious beliefs and his actions after a guardian was appointed.

Dr. Emerick states: "I found him very much embittered against his own son without any cause I could find out. He seemed to have delusions of persecutions." The court is of the opinion that George Smith had, from his view point an actual knowledge and an evident cause for bitterness, and there was no delusion as to persecution and mistreatment but a reality in the shape of the application for a guardian.

Dr. Wagenhals said: "Well he became very much excited * * * he seemed nervous and he wouldn't go home with his son or his grandson, wouldn't seem to cooperate; walked rapidly out of the court house, started down the street in a rapid and excited manner," but in answer to a question by the court, said that this might have been the natural reaction of a normal person whose pride had been hurt by such a proceeding. To the court therefore it seems that all that is left of both of the physicians' testimony on which to base a finding of incompetency is George Smith's religious beliefs, and the same can also be said of the testimony of G. Edwin Smith.

The physicians both testified that George Smith had a peculiar belief. Why peculiar? Because it is different from that of the ordinary person; but it is not different from the beliefs of many thousands of persons who would hardly be termed incompetent. George Smith's belief in the inspiration of the Bible and the Divinity of Christ, and the necessity of holding those beliefs in order to inherit eternal life, is identical with the belief of Jonathan Edwards and countless millions since the beginning of the Christian era. Can this belief be said to be an evidence of incompetency?

It is my understanding that the so-called Russelites, of whom there are many thousands, believe practically as

does George Smith as to the second coming of Christ and the end of the world.    This is not the belief of Presbyterians, Congregationalists or Methodists and it is not my belief, but one should hesitate to declare anyone incompetent to handle his business and personal affairs, because he holds religious views and beliefs different from one's own, or different from that of the majority of people. Religious differences have always been present since the beginning of time and they have caused more wars, more blood shed and more unhappiness among the sons of men than any other one cause.    The instant case is far from the first time that father and son have become estranged because of different religious beliefs. Our religions are matters of faith, and each believes himself to be right.    Some one must be wrong, but who shall be the judge thereof?    No one has yet been able to make proof of these matters which may possibly satisfy all.

The court deeply regrets the unfortunate situation and had hoped for a partial reconciliation, but apparently in vain.

I cannot agree with counsel that the son has any ulterior motive in what he has done.    His life here in Columbus is a complete refutation of such a charge.    I believe he has been prompted by the best of faith, and being fearful that his father, holding the religious views which he has expressed, would be easily imposed upon to the extent of giving away the savings of many years, and perhaps embarrass the companies in which he held stock by placing the same upon the open market, where it might get into the possession of persons undesirable to the other stock holders.    The court is firmly convinced that none of these events need be feared.    George Smith has given his word in open court that he would not waste his property, that he had no knowledge as to how many years might intervene before his looked for end of the world, and realized that he himself might become helpless just as his wife was, and that he might need his property himself, and that therefore he would not materially impair his capital.

He further stated that he would not put any of the stock upon the market in such a way as to embarrass any of the companies.   While he would be under no legal obligation to observe either one of these promises, yet he is under a moral obligation, and being deeply religious as he is, the court has no doubt that these promises will be strictly adhered to.   His wants are few, and his charities, all of which are commendable, are comparatively small, and the fact that he has decreased them during the last year or two, when his income was reduced, by the fact that the G. Edwin Smith Company paid no dividend, is a clear indication of his ability to properly care for that which is his. The son may well be proud of the help given his father through all these years, and he should also be proud of the fine character which exists in the person of that same father.

There are at most but a few years remaining for the father to live on this earth.   His race is nearly run, and the last miles of his journey toward the setting sun should be made as pleasant as possible.   He has worked for more than seventy years and has never had a time of play.   He has the means now of enjoying life in his way, with his small circle of friends, his study of the Bible and his few charities.   To my mind to impose upon him the humility of a guardianship is only to increase the bitterness toward his son and to fill the sunset of his life with deepened shadows.

I am fully convinced that George Smith is not an incompetent within the meaning of the statute, and therefore order the removal of the guardians of his person and estate, and the dismissal of both cases pending in this court.